UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ERIC JOSEY,                                               :          07 Civ. 6420 (SHS)
                                                          :
                     Plaintiff,         :          OPINION AND ORDER
                                                          :
       -against-                                         :
                                                          :
NEW YORK CITY POLICE DEPARTMENT,                          :
POLICE PENSION FUND BOARD OF                              :
TRUSTEES,                                                 :
                                                          :
                     Defendants.        :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

     Pro se plaintiff Eric Josey brings this action against, the New York City Police Department ("NYPD")[1] and the Police Pension Fund ("PPF") Board of Trustees,[2] alleging that the NYPD's failure to investigate properly his September 2003 motorcycle accident and its March 2005 denial of his request for a reasonable accommodation of the disability resulting from that accident, and the PPF Board of Trustees' February 2006 denial of his application for Accident Disability Retirement were discriminatory on the basis of disability and race and were taken in retaliation for his participation as a plaintiff in a prior lawsuit against the NYPD. He asserts claims pursuant to Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 et seq. ("ADA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 et seq. He also asserts common law claims including breach of contract, breach of fiduciary duty, and negligence.

---

[1] Because the NYPD is not a suable entity, see N.Y. City Charter § 396; Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007), the City of New York is substituted as a defendant in place of the NYPD.

[2] In the body of the amended complaint, plaintiff names Police Commissioner Raymond Kelly as a defendant, but court records do not indicate that Commissioner Kelly has been served with the summons and complaint. The Court's analysis is the same whether or not Commissioner Kelly is recognized as a defendant in this action.

1

Defendants now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which will be treated as a motion for summary judgment. The Court concludes that because plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") more than 300 days after the allegedly discriminatory decisions he challenges, his ADA and Title VII claims are untimely and must be dismissed. In the absence of any cognizable federal claim for relief, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and therefore grants defendants' motion for summary judgment in full.

## I.   PROCEDURAL POSTURE

In deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a Court, "in its discretion and upon notice to all parties, [may] consider materials outside the pleadings. If it does, however, the motion is to be treated as one for summary judgment and disposed of as provided by Rule 56." Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 53-54 (2d Cir. 1985); see Fed. R. Civ. P. 12(d).

Here, defendants submitted material outside of the pleadings—specifically, a copy of plaintiff's EEOC filing—with their motion papers, and also provided plaintiff a Local Civil Rule 12.1 notice, informing him of the possibility that defendants' motion could be converted to a motion for summary judgment, that the action could be dismissed without a trial, and that plaintiff had the opportunity to submit affidavits or other materials in support of his allegations. Plaintiff took that opportunity and, in his opposition to defendants' motion, submitted an affidavit and supporting papers specifically addressed to the central issue on this motion—the timeliness of his EEOC filing. The Court therefore concludes that plaintiff has had both notice of the possibility that this motion would be converted to one for summary judgment and a full opportunity to supplement his pleadings in order to oppose the motion, and the Court is treating

this motion as one for summary judgment. See Fed. R. Civ. P. 12(d); Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 324 n.1 (2d Cir. 1999); Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999); Baez v. Kahanowicz, 469 F. Supp. 2d 171, 174-75 & n.5 (S.D.N.Y. 2007); Sloane v. Mazzuca, No. 04 Civ. 8266 (KMK), 2006 WL 3096031, at *3 & n.6 (S.D.N.Y. Oct. 31, 2006).

**II.    BACKGROUND**

Plaintiff, who is African American, was employed by the NYPD for the fifteen years between 1991 and 2006. (Amended Compl. ("Compl.") ¶¶ 10-11.) He served in various capacities during that time, including as a patrolman, a plainclothes and undercover officer, a detective, an instructor at the police academy, and, most recently, as a Special Weapons and Tactics Officer in the Emergency Services Unit. (Id. ¶ 13.)

According to plaintiff, on September 8, 2003, while off duty and riding his motorcycle in the 28th Precinct, he saw a woman being assaulted and kidnapped on the street. (Compl. ¶ 14; Police Accident Report, Ex. G to Compl.) When he stopped to intervene, according to plaintiff, the assailant recognized him from his duties in the precinct and fled. (Compl. ¶ 15.) Shortly thereafter, at an intersection near the scene of the incident, the assailant drove his car into plaintiff's motorcycle. (Id. ¶ 16.) Plaintiff was thrown from the motorcycle, struck a pole, and suffered major injuries. (Id. ¶ 17.) The assailant drove off. (Id.) Plaintiff was hospitalized for two and one half months, undergoing numerous surgeries, and then was transferred to a rehabilitation hospital, where he remained for another two and one half months. (Id. ¶¶ 18, 19.) After his hospitalizations, he spent two months in a wheelchair. (Id. ¶ 20.)

In January 2004, plaintiff was informed that the NYPD had submitted Ordinary Disability Retirement papers on his behalf. (Id.; EEOC Compl. dated Jan. 29, 2007 ("EEOC Compl.") at 3, Ex. 2 to Decl. of Ivan Mendez dated Nov. 30, 2007 ("Mendez Decl.").) Ordinary

3

Disability Retirement would afford him a pension equivalent to one-half of his salary at the time of retirement.  See N.Y. City Admin. Code § 13-257.  (Compl. ¶ 21.)

On November 8, 2004, plaintiff was examined by the PPF Medical Board, which recommended approval of the application for Ordinary Disability Retirement.  (Compl. ¶ 21; EEOC Compl. at 3.)  In a letter dated January 24, 2005, plaintiff, through counsel, informed the PPF Board of Trustees that he intended to return to full duty in his previous position with the Emergency Services Unit and sought, "if necessary, a reasonable accommodation . . . to ensure that he is able to perform essential job functions under the Americans with Disabilities Act." (Compl. ¶ 22; Letter from Pamela R. Goshman to New York City PPF Board of Trustees dated Jan. 24, 2005, Ex. A to EEOC Compl.)  The NYPD denied his request for a reasonable accommodation two months later because the PPF Medical Board had deemed him "not qualified to perform the essential duties of a police officer."  (Compl. ¶ 23; Letter from Neldra M. Zeigler to Pamela Goshman dated Mar. 14, 2005, Ex. C to Compl.)

In May 2005, plaintiff submitted an application for Accident Disability Retirement, which is available to police officers injured in the line of duty and provides for a pension equivalent to three quarters of the officer's salary at the time of retirement.  See N.Y. City Admin. Code §§ 13-252, -258.  (Compl. ¶ 24.)  Retirement on Accident Disability Retirement was therefore preferable for plaintiff to Ordinary Disability Retirement.  On September 12, 2005, the PPF Medical Board reexamined plaintiff in connection with his application for Accident Disability Retirement.  (Id. ¶ 25.)  It concluded that although plaintiff "continue[d] to be seriously disabled," his application for a determination that he had suffered a "line of duty injury" arising from the September 8, 2003 accident had not been approved, and therefore his application for Accident Disability Retirement should also be denied.  (Mem. from Medical

4

Board to PPF Board of Trustees dated Sept. 12, 2005, ¶ 5, Ex. D to Compl.)

On February 8, 2006, the PPF Board of Trustees denied plaintiff's application for Accident Disability Retirement. (Compl. ¶ 26; EEOC Compl. at 4; Letter from Michael Welsome to Eric Josey dated February 8, 2006, Ex. C to EEOC Compl.) Plaintiff did not retire from the NYPD, however, until four and one half months later, on June 24, 2006. (Compl. ¶ 27; Aff. of Eric Josey dated Dec. 17, 2007 ("Josey Aff.") at 4.)

In May 2006, plaintiff initiated an Article 78 proceeding in the New York State Supreme Court, New York County, challenging the denial of his application for Accident Disability Retirement as arbitrary and capricious. (Compl. ¶ 28; Opinion of Justice Robert D. Lippmann dated Sept. 27, 2006 ("Sept. 27, 2006 Opinion"), Ex. B to Josey Aff.) In an order dated November 20, 2006, that court granted plaintiff's petition on the ground that the PPF Medical Board had failed to investigate sufficiently his claim that his injury occurred in the line of duty, and it ordered the PPF Board of Trustees to grant plaintiff Accident Disability Retirement. (Opinion of Justice Robert D. Lippmann dated Nov. 20, 2006, Ex. B to Josey Aff.; Sept. 27, 2006 Opinion.) On appeal of that decision, the New York State Supreme Court, Appellate Division, First Department, recently unanimously reversed the lower court, denied the petition, and dismissed the proceeding. Josey v. City of New York, 50 A.D.3d 393, 854 N.Y.S.2d 311 (1st Dep't 2008), appeal dismissed, ___ N.E.2d ___, 2008 WL 2549842 (N.Y. June 26, 2008).

On January 29, 2007, plaintiff jointly filed a charge of discrimination with the EEOC and the New York State Division of Human Rights ("NYSDHR"). (EEOC Charge of Discrimination, Ex. 2 to Mendez Decl.) Four months later, on May 4, 2007, plaintiff received a right to sue letter, solely as to his claims pursuant to the ADA. (Letter from Karen L. Ferguson, U.S. Department of Justice, to Eric Josey dated May 4, 2007, Ex. A to Compl.) Plaintiff filed a

5

complaint in this action on July 16, 2007.

In his amended complaint, plaintiff alleges that the NYPD's Equal Employment Opportunity office failed to conduct an investigation of his September 2003 motorcycle accident, which he contends occurred in the line of duty. (Compl. ¶¶ 27, 31.) He further alleges that he suffers a disability within the meaning of the ADA as a result of his injuries and that defendants improperly denied him a reasonable accommodation for his disability in violation of the ADA. (Id. ¶ 35, 37.) He also alleges that he was forced to retire because of his race. He contends that numerous other police officers who suffered similar injuries and experienced similar disabilities have been accommodated by assignment to non-patrol positions, referring to one white police officer in particular who sustained serious injuries in a motorcycle accident in 2003, when he had fewer years of service with the NYPD than plaintiff, and was allegedly nonetheless permitted to return to duty. (Id. ¶¶ 38-41.) Plaintiff further contends that defendants took these actions against him in retaliation for participating as a class member in a federal class action employment discrimination suit against the NYPD.[3] (Compl. ¶¶ 61, 67.)

## III.    DISCUSSION

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

---

[3] The suit in which Josey was member of the plaintiff class was entitled Latino Officers Association of the City of New York, Inc. v. City of New York, 99 Civ. 9568 (LAK). On November 14, 2005, plaintiff settled his claim for $85,000 and executed a release of all claims of race and national origin discrimination arising from his employment between September 9, 1996 and December 31, 2003. (Release executed by Eric Josey dated Nov. 14, 2005, Ex. 1 to Mendez Decl.)

The party opposing summary judgment, however, "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), such that "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party,'" Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

Defendants contend that plaintiff's federal claims—i.e., his ADA and Title VII claims—should be dismissed because he failed to file a timely complaint with the EEOC. In New York State, a claim pursuant to the ADA or Title VII is time barred if the plaintiff does not file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice.[4] See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (ADA); Tewksbury, 192 F.2d at 325. The U.S. Supreme Court has recently written that by setting this filing deadline, "Congress clearly intended to encourage the prompt processing of all charges of discrimination." Ledbetter v. Goodyear Tire & Rubber Co., __ U.S. __, 127 S. Ct. 2162, 2170, 167 L. Ed. 2d 982 (2007) (internal quotation marks and brackets omitted).

Plaintiff concedes that he filed his EEOC charge on January 29, 2007. (Josey Aff. at 4.) Defendants contend that that date is more than 300 days after the allegedly discriminatory acts of which plaintiff complains. Specifically, the amended complaint challenges (1) the NYPD's failure to investigate plaintiff's motorcycle accident in September 2003, (2) the NYPD's March 14, 2005 denial of his request for a reasonable accommodation, and (3) the PPF Board of

---

[4] A charge of discrimination must be filed with the EEOC within 180 days of the alleged discriminatory act unless "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case the claimant has 300 days from the alleged discriminatory act in which to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). The NYSDHR is such a state agency. Tewksbury, 192 F.3d at 325. Because plaintiff filed his charge jointly with the EEOC and NYSDHR (EEOC Charge of Discrimination, Ex. 2 to Mendez Decl.), the 300-day deadline applies. See id.

7

Trustees' February 8, 2006 denial of his application for retirement for accident disability. Defendants contend that although plaintiff filed his EEOC charge within 300 days of the day he retired, that date is irrelevant for purposes of the deadline for filing an EEOC charge because plaintiff does not contend that any discriminatory act occurred on that date. Plaintiff responds that although the decisions leading to his retirement admittedly occurred more than 300 days before he filed his EEOC charge, he suffered no adverse effect from those decisions until he was forced to retire on June 24, 2006. (Id.) Thus, he argues, the time for filing of his EEOC charge should begin to run at his retirement, which is fewer than 300 days before the filing of his EEOC charge on January 29, 2007.

Defendants are correct. In Delaware State College v. Ricks, 449 U.S. 250, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980), a college professor who was denied tenure challenged that decision as discriminatory on the basis of his national origin. 449 U.S. at 252. The college's tenure committee had initially recommended in February 1973 that he be denied tenure, and it adhered to that decision on reconsideration one year later, in February 1974. Id. The next month, the college's board of trustees voted formally to deny him tenure. Id. Two months later, he filed an internal grievance, and, in June 1974, while that grievance was pending, entered into a one-year "terminal" contract with the college to continue teaching there until June 1975. Id. at 253. In September 1974, the grievance committee notified the plaintiff that it had denied his grievance. Id. He filed a charge of discrimination with the EEOC in April 1975. Id.

The U.S. Supreme Court held that Ricks's Title VII claim was untimely because he had not filed his EEOC charge within 180 days of the college's allegedly discriminatory actions. Id. at 257. The Court explained that "[d]etermining the timeliness of [the plaintiff's] EEOC complaint, and this ensuing lawsuit, requires us to identify precisely the unlawful employment

8

practice of which he complains." Id. (internal quotation marks omitted). Although the plaintiff contended that the college acted unlawfully not only in denying him tenure, but also in terminating his employment at the end of his one-year terminal contract in June 1975, the Court wrote that "[m]ere continuity of employment without more, is insufficient to prolong the life of a cause of action for employment discrimination." Id. Rather, because termination of employment at the college was "a delayed, but inevitable, consequence of the denial of tenure," for the EEOC filing deadline to run from the end of his employment contract, he would have to have alleged and proved that "the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who also had been denied tenure." Id. at 257-58.

Thus, the Supreme Court concluded, the plaintiff's time to file began to run when the college made its tenure decision and communicated it to him, in June 1974, "even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later." Id. at 258 (emphasis in original). Moreover, the plaintiff's internal grievance did not affect the filing deadline because "[t]he grievance procedure, by its nature, is a remedy for a prior decision, not an opportunity to influence that decision before it is made." Id. at 261 (emphasis in original).

As the Supreme Court subsequently explained in reaffirming the reasoning of Ricks, where a plaintiff alleges multiple, distinct unlawful employment practices, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Such "discrete" acts include termination, failure to promote, denial of transfer, or refusal to hire. Id. The time limit to file an EEOC charge runs from the date the plaintiff "knew or had reason to know of the

9

injury serving as the basis for his claim." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

Here, plaintiff complains of three discrete acts by defendants, none of which occurred within 300 days of January 29, 2007, when he filed his EEOC charge. Plaintiff does not allege that his retirement was itself discriminatory. Rather, as in Ricks, he asserts that the date of his retirement was when he experienced the effect of defendants' discriminatory actions. (Josey Aff. at 4.) Thus, as in Ricks, the date of his retirement is irrelevant for purposes of determining when the 300-day filing deadline began to run. Moreover, plaintiff's initiation of an Article 78 proceeding in New York state court does not alter the analysis because, as with the grievance procedure in Ricks, the Article 78 petition is solely a remedy for discrimination that has already occurred, and does not alter the dates on which the allegedly discriminatory acts took place. Ricks, 449 U.S. at 261.

Timely filing a charge of discrimination with the EEOC is not a jurisdictional prerequisite, but is rather "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). Nonetheless, compliance with the 300-day EEOC filing requirement "stands as an essential element of Title VII's statutory scheme, . . . one with which defendants are entitled to insist that plaintiffs comply." Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotation marks and citation omitted). Because defendants asserted the untimeliness of plaintiff's filing both in their answer to the amended complaint and in their motion for judgment on the pleadings, there is no question of waiver here. Nor is there any apparent reason why defendants should be estopped from asserting this defense.

Moreover, "equitable tolling is only appropriate in rare and exceptional circumstances in

10

which a party is "prevented in some extraordinary way from exercising his rights." <u>Zerilli-Edelglass v. N.Y. City Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks, brackets, and citations omitted).  To determine whether equitable tolling is applicable, "a district court must consider whether the person seeking application of the equitable tolling doctrine . . . has acted with reasonable diligence during the time period []he seeks to have tolled, and . . . has proved that the circumstances are so extraordinary that the doctrine should apply." <u>Id.</u> at 80-81 (internal quotation marks omitted).

Here, plaintiff states in his affidavit in opposition to defendants' motion that he was aware that he had 300 days after the alleged discriminatory acts in which to file a charge with the EEOC, but believed that this time limit ran from the date of his allegedly coerced retirement. (Josey Aff. at 4.)  Plaintiff's misunderstanding of the law does not present sufficiently "rare and exceptional circumstances," <u>id.</u> at 80, to justify equitably tolling his time to file an EEOC charge. <u>See</u> <u>id.</u> ("Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." (internal quotation marks and citations omitted)).

Accordingly, Josey's claims pursuant to the ADA and Title VII are untimely and must be dismissed.  The federal claims having been dismissed, this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  28 U.S.C. § 1367(c)(3); <u>see</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 & n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006).

IV. **CONCLUSION**

Because plaintiff did not file a timely charge of discrimination with the EEOC, his claims pursuant to the ADA and Title VII are untimely and must be dismissed, and the Court declines to exercise jurisdiction over the state law claims. Accordingly, defendants are entitled to summary judgment in their favor dismissing the amended complaint.

Dated: New York, New York
July 7, 2008

SO ORDERED:

_Sidney H. Stein_
Sidney H. Stein, U.S.D.J.